Steve J. Vodantis v. Commissioner. Steve J. Vodantis and Anna Vodantis v. Commissioner.
Vodantis v. Commissioner
Docket Nos. 40425, 40434.
United States Tax Court
1954 Tax Ct. Memo LEXIS 323; 13 T.C.M. (CCH) 45; T.C.M. (RIA) 54029; January 22, 1954
*323 1. Respondent determined income tax deficiencies for 1947 through 1950 based upon computation of petitioners' income pursuant to the "net worth increase" method. Held, respondent's use of the "net worth increase" method was unjustified under section 41 upon which he relies, because petitioners' books were sufficiently adequate and complete for income to be correctly determined therefrom. Petitioners' income redetermined from the books and records for each of the taxable years. 2. Held, no part of petitioners' tax deficiency was due to fraud with intent to evade taxes. 3. Held, petitioners are liable for the penalty provided in I.R.C., section 294(d)(1)(A) for failing, without reasonable cause, to file a declaration of estimated tax. Atwell J. Brown, Esq., for the petitioners. Arthur L. Nims, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has computed petitioners' income for the calendar years 1947 through 1950 pursuant to the so-called "net worth increase" method and has determined the following income tax deficiencies and penalties: 50% Fraud
10% Estimated
Penalty
Tax Penalty
Year
Deficiency
[Sec. 293(b)]
[Sec. 294(d)(1)(A)]
Docket No. 40425
1947
$2,711.85
$1,355.93
$271.20
Steve J. Vodantis
1948
3,442.54
1,721.27
344.24
Docket No. 40434
Steve J. Vodantis
1949
2,793.22
1,396.61
279.32
and Anna Vodantis
1950
1,683.88
841.94
168.38
Petitioners *324 contend that the Commissioner's use of the net worth method was arbitrary since their income could be determined from books and records which accurately reflected such income and that, in any event, the Commissioner's net worth computations and determination of living expenses were erroneous in certain particulars. Petitioners also contest the imposition of the fraud penalties and the penalties asserted for failure to file declarations of estimated tax. Findings of Fact Petitioners Steve J. Vodantis and Anna Vodantis (hereinafter referred to as Steve and Anna, respectively) are husband and wife who, during 1947 through 1950, resided in Fairfield, Alabama. Steve filed individual income tax returns for 1947 and 1948, and he and Anna filed joint returns for 1949 and 1950. The returns for those four years were prepared on the cash receipts and disbursements basis and were filed with the Collector of Internal Revenue for the District of Alabama. Steve was born in Greece. He received a total of 18 months of schooling there and then worked on a Greek merchant ship where he learned to paint metal. In 1931, when he was 21 years old, he came to the United States and worked successively as a *325 dishwasher, in a steel mill, and as a rubber mixer for a tire company. It was necessary for him to leave the last job because of its ill effects on his health and he was at that time cautioned to seek work that would keep him out-of-doors. Consequently, he began painting buildings and, in 1936, went to Birmingham, Alabama, and became a foreman for a local painting company. In 1939, he went into business for himself under the name of the Alabama Painting and Roofing Company, which business consists mainly of painting steel structures. Steve has been in that business ever since 1939. In 1946, Steve formed a partnership with three other men to operate the Capitol City Cafe. He bought out the other partners in 1948, acquiring thereby the entire business. The Capitol City Cafe has been in operation throughout all the taxable years in issue except for a period of five months ending in February 1950, when it was closed for alterations. It was managed by Steve and Anna, but the latter did most of the work since Steve was occupied with his painting business. Steve could not speak English when he arrived in the United States and his present knowledge of the language is limited. In fact he converses *326 in Greek with his family and friends and uses English only when necessary in his business dealings. He and Anna live modestly, she does all the cooking and washing for the family and they spend very little on clothes. Because either Steve, Anna, or both of them, worked in the cafe in the evenings they seldom entertained at home or went out for such purposes. They have one son, who was a minor during the years in issue and a college student in 1949 and 1950. Part of the son's college expenses were paid by Steve and the son worked in order to meet the remainder of his expenses. The only sources of income of petitioners were the Alabama Painting and Roofing Company, the Capitol City Cafe and, in 1947 and part of 1948, the rent derived from leasing the cafe building and fixtures, which Steve owned, to the cafe partnership of which he was a member. In 1947, Steve's painting company entered into a contract with the State of Kentucky to clean and repaint two bridges near Earlington, Kentucky. He estimated that the job would take about six weeks. However, the state authorities insisted that ordinary cleaning methods were not adequate and required him to sandblast the bridges before painting *327 them. As a result the job lasted two and a half months in 1947 and all of the 1948 outdoor painting season, and the Alabama Painting and Roofing Company lost $7,000 thereon. In 1947, the painting company also entered into a contract with the T.V.A. to perform some work in Tennessee. Because of inexperience that job was not completed until the end of 1948 and the company lost $16,000 thereon. The Alabama Painting and Roofing Company employed a single-entry, cash basis method of accounting during the years in issue and maintained the following books and records in connection therewith: (1) cash receipts and disbursements journal in which was entered all bank deposits and all disbursements either by check or cash, the disbursements being allocated to the appropriate accounts in the journal, (2) cash sales book in which miscellaneous cash sales were entered, (3) a subsidiary book in which invoices, along with the dates they were paid, were listed, (4) beginning in 1948, a book in which was recorded the estimates given those for whom work was being done and the amounts received thereon (the company was frequently paid monthly on the basis of an estimate of work completed during that month), *328 (5) complete bank statements, (6) complete file of checks, and (7) complete payroll records. The Capitol City Cafe filed partnership returns for 1947 and 1948 and Steve's share of the partnership income, as well as the rent he received from the partnership for the cafe building and fixtures, was properly reported on his individual returns for those years. During 1949 and 1950, when Steve was the sole owner of the cafe, he maintained a form book of accounts issued by the National Cash Register Company for use in those cases where a simplified bookkeeping method is adequate. The accounting method employed was single-entry, cash basis. The aforementioned books and records of Steve's two businesses were available for inspection by respondent's agents and the books themselves were present at the hearing of the instant case. Steve's books were kept, in 1947, by a part-time bookkeeper who had previously taken a business college course in bookkeeping. During 1949 and 1950, the books were kept by a woman who acted both as Steve's bookkeeper and secretary. The extent of her bookkeeping training and experience is not apparent from the evidence.steve was familiar with the books of the cafe and *329 painting company and would examine them carefully at the end of each month to determine the profit or loss resulting from the month's operations. It appears, and we so find, that all of the receipts and disbursements of the cafe were entered in its book during the years in question. Similarly, all of the painting company's receipts and disbursements were entered in its books during the years in issue except receipts of $884.75 from a roofing job. That item, which was listed in the company records but had not been reflected in the books, was called to the attention of respondent's agent by an accountant later employed by petitioners in connection with this case. Petitioners' tax returns for the years in question were prepared by H. E. Reagor, who then was, and still is, employed by a concern in a position which indicates that he has some knowledge of accounting, although the extent of that knowledge is not determinable from the record. In preparing the returns Reagor relied entirely on recapitulations of figures taken from the books of Steve's two businesses. The recapitulations were prepared by Steve's bookkeepers and Reagor never inspected the books themselves. The returns prepared *330 by Reagor reported the following income and losses: Steve J. Vodantis
Steve J. Vodantis
and Anna Vodantis
1947
1948
1949
1950
Alabama Painting and Roofing Company
($3,768.87) *
($1,483.18)
$0.00
$8,702.65
Capitol City Cafe
1,200.00
1,237.65
( 2,316.73)
( 9,071.93)
Rent of Cafe bldg. & fixtures
1,153.81
119.03
Adjusted Gross Income
($1,415.06)
($ 126.50)
($2,316.73)
($ 369.28)
We find that the books of the Alabama Painting and Roofing Company and the Capitol City Cafe were sufficiently complete and adequate for the computation of income derived from those enterprises by the petitioners. However, serious errors were made by Steve's bookkeepers in recapitulating income from those books. As a result, the above noted income reported on the tax returns for 1947 through 1950 was not a true reflection or interpretation of what the books contain. Prior to the hearing in the instant case, petitioners retained Norman G. Williams to determine the correct income from the books. Williams, who appeared as a witness at the hearing, is a certified public accountant and holds a degree in business administration from the University of Alabama. He worked as an internal revenue agent for four years and seven *331 months and, at the time of the hearing, had been engaged in private practice for one and one-half years. Williams made a complete survey of the books and records and determined that the adjusted gross income realized by the petitioners from all sources during 1947 through 1950, was as follows: 1947
($5,954.95)
1948
8.03
1949
925.55
1950
7,870.17 Williams determined that income for 1946 had erroneously been reported on Steve's 1947 return. Adjusting to correct that error, he arrived at a greater deficit for 1947 than Steve reported. It is not necessary for us to detail the many other adjustments made by Williams in arriving at the above figures except to indicate that they involved corrections for excessive depreciation, improper taking of net loss carry-overs, expensing rather than capitalizing improvements, improper deductions, and failure to report certain items of income in the tax returns for 1947 through 1950. Considering all the facts, we find that the income determined by Williams from the books is correct. We further find that respondent's use of the increase in net worth method was unjustified and did not correctly reflect petitioners' net income for the taxable years. No part of *332 petitioners' deficiencies was due to fraud with intent to evade tax. Petitioners failed to file a declaration of estimated tax for 1950, as is required by section 58 of the Internal Revenue Code. That failure was due to willful neglect, not to reasonable cause. Opinion BLACK, Judge: Respondent has determined deficiencies in petitioners' income taxes for the years 1947 through 1950 on the basis of reconstruction of petitioners' income pursuant to the "net worth increase" method. Section 41, I.R.C.[1] *333 We have found as facts that petitioners' income during the years in question came from the following sources only: Alabama Painting and Roofing Company, Capitol City Cafe and, in 1947 and 1948, rent received from leasing the cafe building and fixtures to the partnership owning that business (of which Steve was a member). We have further found that the 1947 and 1948 rental income from the cafe, as well as Steve's partnership income therefrom, was correctly reported on his returns for those two years. Our consideration, therefore, is directed toward the income derived from the Alabama Painting and Roofing Company and, in 1949 and 1950, from the Capitol City Cafe which was wholly-owned by Steve in those latter years. During the years in issue the following books and records were maintained for the Alabama Painting and Roofing Company: (1) cash receipts and disbursements journal, recording bank deposits and all disbursements, (2) cash sales book for miscellaneous cash sales, (3) a book listing invoices and the dates they were paid, (4) beginning in 1948, a book listing estimates given those for whom jobs were being done, and *334 the amount of money received thereon, (5) bank statements, (6) check file, and (7) payroll records. In 1949 and 1950, a simplified form book of accounts, issued for small businesses by the National Cash Register Company, was maintained for the Capitol City Cafe. The bookkeeping method employed in both businesses was single-entry, cash basis. The books were kept in 1947 by a parttime bookkeeper who had taken a business college course in bookkeeping. In 1949 and 1950, they were kept by a woman who acted as Steve's secretary and bookkeeper but whose knowledge of bookkeeping is not apparent from the record. Steve testified that he understood the books and checked them monthly to determine profit or loss from the particular month's operations. All of the cafe's receipts and disbursements for 1949 and 1950 were recorded in the book maintained therefor. Similarly, with one exception, all of the Alabama Painting and Roofing Company's receipts and disbursements for 1947 through 1950 were reported in the appropriate books. That exception was an income item of $884.75, which was contained in the company's records but had not been entered in the books, and which was called to respondent's attention *335 by an accountant retained by petitioners. All of the aforementioned books and records were available for inspection by respondent's agents and the books themselves were present at the hearing of the instant case. Considering all the facts, we have found, and so hold, that the books of the cafe and the painting company reflected income from those sources with a sufficient degree of accuracy. In view of this holding, and the further holding that Steve properly reported his 1947 and 1948 partnership income from the cafe and the rent received for the cafe building and fixtures in those years, we conclude that respondent's employment of the net worth method of computing petitioners' income was unauthorized by section 41 of the Code upon which he relies. Thomas A. Talley, 20 T.C. 915, promulgated June 20, 1953; Helvering v. Taylor, 293 507. What we said in Thomas A. Talley, supra, is here applicable: "Section 41 provides that 'net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books' of the taxpayer. The Commissioner's authority under section 41 to compute the income 'in accordance with such method as in the opinion of the Commissioner *336 does clearly reflect the income' exists only if no method of accounting has been regularly employed in keeping the books of the taxpayer, or 'if the method employed does not clearly reflect the income.' See Regulations 111, sections 29.41-1 and 29.41-2. The evidence clearly establishes that neither of those qualifying conditions existed here * * *. An accurate computation of income for all years in question could have been made from the books of account." Although, as aforementioned, the books of the cafe and painting company accurately reflected income, substantial errors were made in preparing petitioners' income tax returns therefrom. The adjusted gross incomes reported by petitioners, from all sources, and their correct adjusted gross income are as follows: Reported Adjusted
Correct Adjusted
Year
Gross Income
Gross Income
Docket No. 40425
1947
($1,415.06) *
($5,954.95)
Steve J. Vodantis
1948
( 126.50)
8.03
Docket No. 40434
Steve J. Vodantis
1949
( 2,316.73)
925.55
and Anna Vodantis
1950
( 369.28)
7,870.17
Since petitioners were entitled to three personal exemptions (for themselves and their son) during the years in issue under section 26 (b) (1) of the Code, it is clear that 1950 is *337 the only year for which they are deficient in taxes.
Respondent contends that petitioners' deficiency is due to fraud with intent to evade taxes and that the statutory 50 per cent fraud penalty should be imposed. I.R.C. section 293 (b). [2] However, respondent has failed to carry his burden of proving fraud by clear and convincing evidence and must therefore fail in this contention. I.R.C., section 1112. [3] We have made a finding that "no part of petitioners' deficiencies was due to fraud with intent to evade tax." On the strength of this finding we hold that fraud penalties were improperly imposed. Petitioners *338 failed to file a declaration of estimated tax for any of the years here involved but it is unimportant for all the years except 1950, because it is clear from our findings that there is no deficiency in tax for any of the years except 1950. Petitioners failed to file a declaration of estimated tax for 1950 or to pay any installments of estimated tax for that year. I.R.C., sections 58, 59. Section 58 (a) (2) of the Code requires an individual to make a declaration of estimated tax for the taxable year if "his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more." The declaration must be filed by March 15 of the taxable year or, if it does not then reasonably appear that sufficient income will be received to require the filing, by either the following June 15, September 15, or January 15, whichever date next succeeds the time it first reasonably appears that such income will be received. I.R.C., section 58 (d) (1). If sufficient income is received but no declaration is filed the taxpayer is subject to a maximum penalty of 10 per cent of his income tax for the particular *339 year, unless he can show that his failure to so file was "due to reasonable cause and not to willful neglect." I.R.C., section 294 (d) (1) (A) . [4] *340 In determining whether petitioners' failure to file was due to reasonable cause, the burden of proving which is on petitioners, reference to those cases dealing with the similar problem of failure to file personal holding company returns is appropriate. Rene R. Bouche, 18 T.C. 144. It is clear from such cases that a taxpayer's failure to file is not "due to reasonable cause" when it results from his ignorance of the taxing statute, or his reliance upon an agent to whom insufficient information is disclosed or who is likewise unfamiliar with the requirements of the taxing statute. Rene R. Bouche, supra; Tarbox Corporation, 6 T.C. 35; Hermax Co., 11 T.C. 442, affd. 175 Fed. (2d) 776. Nor, do we think, may a taxpayer escape blame when his failure to file is ascribable to reliance upon an agent whom he does not have reasonable cause to believe is qualified for the particular job assigned. We have shown that petitioners' adjusted gross income was $925.55 for 1949 and $7,870.17 for 1950. Since their 1949 income exceeded the $600 requirement of section 58 (a) (2) of the Code and since there was no *341 indication of a slump in their business, petitioners by March 15, 1950, should have reasonably expected their 1950 income to likewise exceed $600. The fact that they actually reported (and believed themselves to have realized) a deficit for 1949 is not, because of the following circumstances, "reasonable cause" for feeling they would fail to earn sufficient income in 1950 to require the filing of a declaration: (1) their 1949 return was prepared by H. E. Reagor from a recapitulation of the books prepared by their bookkeeper, (2) there is no evidence that the bookkeeper was qualified to prepare such recapitulations for income tax purposes and we have, in fact, found that they were incorrect, consequently, insufficient information was given Reagor, and (3) there is no evidence that Reagor himself was a qualified accountant or adept in the preparation of income tax returns. Rene R. Bouche, Tarbox Corporation, Hermax Co., all supra. Moreover, even if we concede that petitioners could not, by March 15, 1950, have reasonably expected their income to $600exceed, the fact that their income for 1950 totaled $7,870.17 indicates that they should have reasonably expected it to exceed $600 prior *342 to the subsequent dates (specified in section 58 (d) (1)) for the filing of a declaration. It is no excuse that during the year petitioners may have relied on their bookkeeper's interpretation of what the books indicated regarding income realized since the evidence does not show that the bookkeeper was qualified to render such interpretations. On the contrary, however, the evidence does reveal that Steve himself was familiar with the books and checked them monthly to determine profit or loss. Finally, as aforementioned, there can be no defense based on a contention that neither petitioners nor their bookkeeper were aware of the requirement to file a declaration. Accordingly, we hold that petitioners are liable for the penalty prescribed under I.R.C., section 294 (d) (1) (A). The penalty must, of course, be recomputed in accordance with the deficiencies determined under Rule 50. Decisions will be entered under Rule 50. Footnotes
*. ( ) denotes loss.↩
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.
*. ( ) denotes loss↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2). ↩
3. SEC. 1112. BURDEN OF PROOF IN FRAUD CASES. In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner.↩
4. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - (1) Failure to file declaration or pay installment of estimated tax. - (A) Failure to file declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35.